## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Advance Wire Forming, Inc.,**<br>**et al.,** | **Case No. 1:18cv723** |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **Jeffrey Stein, et al.,** | **MEMORANDUM OPINION & ORDER** |
| **Defendants** | |

This matter is before the Court upon the following Motions filed by Defendants Jeffrey Stein and Plastic and Products Marketing, LLC: (1) Motion *in Limine* to Exclude Evidence and Argument regarding Dismissed Counts (Doc. No. 188); (2) Motion *in Limine* to Exclude Alleged Misrepresentations that Induced Plaintiffs to Enter into the Settlement Agreement (Doc. No. 220); (3) Motion *in Limine* to Exclude Parol Evidence (Doc. No. 190); and (4) Motion *in Limine* to Exclude Reference, Testimony, or Evidence of Plaintiffs' Claim that Jeffrey Stein Intentionally Sabotaged a Plastics Order Received by Plaintiff Advance Wire Forming, Inc. (Doc. No. 187.) Plaintiffs Advance Wire Forming, Inc., Advance Industries Group, LLC, AIG Holdings, LLC, and James Williams filed Briefs in Opposition on March 15 and April 8, 2022, respectively. (Doc. Nos. 192, 193, 195, 222.)

For the following reasons, Defendants' Motions *in Limine* to Exclude Evidence and Argument regarding Dismissed Counts (Doc. No. 188) and to Exclude Evidence regarding Alleged Misrepresentations (Doc. No. 220) are granted in part and denied in part. Defendants' Motion *in Limine* to Exclude Parol Evidence (Doc. No. 190) is granted in part and denied in part. Defendants' Motion *in Limine* to Exclude Evidence of Plaintiffs' Claim that Stein Intentionally Sabotaged a Plastics Order received by Plaintiff AWF (Doc. No. 187) is denied.

I.    **Relevant Background**

A.    **Factual Background**

The Court summarizes the facts relevant to the instant Motions as follows.[1]  Plaintiff Williams and Defendant Stein were formerly co-owners of Plaintiffs Advance Wire Forming, Inc. ("AWF"), Advance Industries Group, LLC ("Industries"), and AIG Holdings, LLC ("Holdings").  (Deposition of Jeffrey Stein (Doc. No. 133-1) at Tr. 5-6, 8.)  In July 2015, Stein was hospitalized and treated for various mental health conditions.  (Doc. No. 153-16, Doc. No. 153-18, Doc. No. 151-8.)  While Stein was in the hospital, his son Michael Stein ("Michael") came to the offices of AWF and took possession of a prototype for a cooler that his father had been developing for AWF.  (Deposition of Michael Stein (Doc. No. 131-1) at Tr. 87.)

Stein did not return to work for Plaintiffs after he was discharged from the hospital.  Instead, in January 2016, Stein, through counsel, made a demand for mediation and arbitration to discuss a buy-out of his interests in AWF, Industries, and Holdings.  (Williams. Aff. (Doc. No. 158-46) at ¶ 11.)  The parties and their counsel engaged in formal mediation proceedings in March 2016, culminating in the execution of a "short form" agreement regarding the terms of a buy-out (hereinafter "March 2016 Mediation Agreement").  (Doc. No. 153-30.)

Plaintiff alleges that, between the date Stein left AWF in July 2015 and March 2016, Williams' and Monroe's communications regarding AWF and a potential buy-out of Defendant Stein's interests were with Stein's son, Michael. (Williams Aff. at ¶ 12; Monroe Aff. at ¶ 9.)  Both Williams and Monroe state that, during these communications, Michael represented that his father

---

[1] The facts underlying this action are thoroughly set forth in this Court's August 25, 2020 Memorandum Opinion & Order regarding the parties' cross Motions for Summary Judgment (Doc. No. 163) (hereinafter "Summary Judgment Order") and will not be repeated in full herein.

"was stressed out, suicidal, and suffering from a nervous breakdown." (Williams Aff. at ¶ 15; Monroe Aff. at ¶ 10.) Michael also allegedly told them that Stein wanted to retire and move to Florida, and that "his father was too concerned about his physical and mental well-being and was in no shape to ever work again." (Williams Aff. at ¶ 15, 18.) *See also* Monroe Aff. at ¶ 15.

Between March and June 2016, the parties, through counsel, exchanged drafts of a formal Settlement Agreement.  In June 2016, the parties executed a formal (1) Settlement Agreement and Mutual Release; and (2) Non-Competition Agreement.  (Doc. Nos. 153-36, 153-37.)  In the former, Stein agreed to assign, transfer, and sell all of his shares in AWF, Industries, and Holdings, in exchange for a monetary payment from Plaintiffs.  (Doc. No. 153-36 at ¶¶ 1, 2.)  In addition, the June 2016 Settlement Agreement contains mutual release provisions, as well as (among other things) a confidentiality provision, a provision requiring Stein to use his best efforts to locate and return the cooler prototype, and a non-disparagement provision.  (*Id*. at ¶¶ 10, 15, 19.)

The June 2016 Non-Competition Agreement also contains several additional relevant provisions, including the following:

> **2.3**    **Agreements of Stein**.   Stein covenants that during the Non-Competition Period, Stein will hold in confidence the proprietary information of Company and will not disclose it to any third party except with the specific prior written consent of Company.  None of the foregoing obligations and restrictions applies to any part of the proprietary information that Stein demonstrates was or became generally available to the public other than as a result of a disclosure by Stein.
>
> ***
>
> **3.2**    **Covenants of Stein**.  Stein covenants that he will not, directly or indirectly whether or not for consideration, during the Noncompetition Period:
>
> **(a)  (i) operate, control, advise, be engaged by, perform any consulting services for, invest in or otherwise become associated in any capacity with, any business, company, partnership, organization, proprietorship, or other entity, who or which, at any time during the Noncompetition**

> **Period, conducts the Business in any manner within a thirty (30) mile radius of either the  real property  located  at  3636 West 58th Street, Cleveland, Ohio, or (ii) engage in any practice the purpose of which is to evade the provisions of this covenant**;
>
> (b) (i) solicit, induce or attempt to solicit or induce any employee of Company to terminate his or her relationship with Company; (b) induce or attempt to induce any supplier, contractor or customer of Company to terminate or adversely change its relationship with Company; or (c) employ any person who was an employee of Company until six (6) months after such individual's employment relationship with Company has been terminated.

(Doc. No. 153-37) (emphasis added). The Non-Competition Agreement defines the term "the Business" as follows: "'Business'—means the sale of commercial wire."  (*Id*. at PageID# 6687.)  In addition, it provides that the "Non-Competition Period" is five years from the execution of the agreement.  (*Id*.)

Plaintiffs allege that, both before and after the June 2016 Agreements were executed, Stein was actively engaging in negotiations to acquire the assets of a Florida company owned by Lynne Boykin (hereinafter referred to as "Boykin Manufacturing").  (Stein Depo. at Tr. 13, 15-16; Doc. Nos. 153-24, 153-26; Boyko Depo. (Doc. No. 129-1) at Tr. 120-121.)  Williams and Monroe testified in deposition that they were not aware that Stein was pursuing any business opportunities, believing that he intended to retire for health reasons.[2]  (Williams Depo. (Doc. No. 135-1) at Tr. 143-144; Monroe Depo. (Doc. No. 140-1) at Tr. 69-71.)

---

[2] In November 2015, Williams and Monroe were contacted by plastics broker, Joseph Winiarksi.  Mr. Winiarksi testified that, in October 2015, Stein told him that he was opening a new plastics company and was leaving AWF because "he was getting f***ed by his partners and he needed to get the hell out."  (Winiarski Depo. at Tr. 37, 92-93.)  Winiarksi contacted Williams and Monroe and told them what Stein allegedly said.  (*Id*. at Tr. 95.)  Williams then advised his attorney, Joseph Burke, who contacted Stein's counsel, Larry Crystal.  (Williams Aff. at ¶ 20.)  Crystal forwarded Burke an email from Stein in which Stein denied that the alleged conversation with Winiarski took place. (Doc. No. 152-23.)

4

At some point in late 2016 or early 2017, Stein formed Defendant PPM in Florida.  (Stein Depo. at Tr. 19-20.)  On January 31, 2017, Defendant PPM and Boykin Manufacturing executed an Asset Purchase Agreement for the purchase and sale of the assets of Boykin Manufacturing d/b/a/ Plastics & Products.  (Doc. No. 153-40.)  Stein testified that PPM sells a wide variety of plastic products, including through its Amazon online store.  (Stein Depo. at Tr. 25-26, 63.)  It does not, however, sell wire products.  (*Id*. at Tr. 51-53.)  Plaintiffs subsequently became aware that Stein was operating Defendant PPM and ceased making monthly installment payments under the June 2016 Settlement and Non-Competition Agreements after January 2018.  (Stein Aff. (Doc. No. 152-2) at ¶ 3.)  In April 2018, Defendants sold a plastic condiment organizer directly to Plaintiff Williams at the address for AWF, Industries, and Holdings.  (Stein Depo. at Tr. 97-100; Doc. No. 153-41.)  In October 2018, Plaintiffs discovered that Defendants sold a different plastic condiment organizer to an individual in Cleveland, within a 30-mile radius of Plaintiffs' property.  (Stein Depo. at Tr. 38-41; Doc. No. 153-42.)  Stein acknowledged in deposition that AWF also manufactured this particular product.  (Stein Depo. at Tr. 38-41.)

Plaintiffs claim (and Defendants do not dispute) that, at some point after Plaintiffs filed the instant lawsuit, Stein returned the cooler prototype that his son Michael had taken from AWF in July or August 2015.

## B.    Procedural Background

On February 23, 2018, Plaintiffs filed a Complaint against Stein in the Cuyahoga County Court of Common Pleas, alleging numerous state-law claims arising out of the alleged breach of the parties' Settlement and Non-Competition Agreements.  (Doc. No. 1-1.)  Stein removed the action to this Court on March 29, 2018 on the basis of complete diversity of citizenship.  (Doc. No. 1.)

5

Case: 1:18-cv-00723-PAB Doc #: 223 Filed: 05/11/22 6 of 40. PageID #: 9280

Plaintiffs filed an Amended Complaint on November 20, 2018, in which it added PPM as a Defendant. (Doc. No. 19.) As it is relevant to the issues raised in the instant motions *in limine*, the Court will discuss the claims asserted in the Amended Complaint in some detail.

In Count I, Plaintiffs allege claims for "breach of contract/breach of implied covenant of good faith." (*Id*. at ¶¶ 69-85.) Therein, Plaintiffs first allege that Stein and PPM breached the following provisions of the June 2016 Agreements: (1) the non-competition provision set forth in Section 3.2(A) of the Non-Competition Agreement; (2) the confidentiality provisions set forth in Section 10 of the Settlement Agreement and Section 2.3(a) of the Non-Competition Agreement; (3) the cooler prototype provision set forth in Section 15 of the Settlement Agreement; (4) the non-disparagement provision set forth in Section 2.2 of the Non-Competition Agreement; (5) the non-solicitation provision set forth in Section 3.2(B) of the Non-Competition Agreement; and (6) the "fair business practices" provision set forth in Section 12 of the Settlement Agreement.[3] (*Id*. at ¶¶ 69-79.) Plaintiffs go on to specifically allege that Stein breached these various provisions by:

> a.      Improperly misappropriating, using and/or disclosing Plaintiffs' proprietary and confidential property, included [sic] Plaintiffs' trade secrets, research and development, client lists, pricing and other financial information, and the cooler prototype, including but not limited to disclosing said proprietary and confidential property, included [sic] Plaintiffs trade secrets to Plastic & Products Marketing; using Plaintiffs' proprietary and confidential property, included [sic] Plaintiffs' trade secrets, to produce the same or substantially similar product at less cost; and/or marketing same directly to Plaintiffs' clients at a price that was less than Plaintiffs' confidential price.
>
> b.      Unfairly competing against Plaintiffs in contradiction to the spirit of, and the express covenants in, the Settlement and Non-Compete agreements by using Plaintiffs' proprietary and confidential property, included [sic] Plaintiffs' trade secrets, to produce the same or substantially similar product without the costs for

---

[3] This Section provides as follows: "Effective as of the date of this Agreement, the parties agree that each party, their representatives, agents, successors, or assigns shall maintain fair business practices of competition as between all opposing parties."

research and development or other costs sustained by Plaintiffs to develop same; and/or marketing same directly to Plaintiffs' clients at a price that was less than Plaintiffs' confidential price.

c.      Failing to use his best efforts to locate and return Plaintiffs' cooler prototype and/or other confidential and proprietary information by claiming to not know where it was for a substantial period of time all the while Defendant Stein was misappropriating all of the confidential and proprietary information and trade secrets from same;

d.      Disparaging/Defaming Plaintiffs to Plaintiffs' customers in two ways: while Stein was still employed and running Advance Wire he took a large order, at a low price, and then abandoned the company while the product was in production. As a result, 30-40% of the end product was nonconforming and the customer, Nestle, refused to pay Advance Wire generating a $76,000.00 loss.  After Stein purchased his new company, he solicited the same business providing the same product produced by Advance Wire from Nestle. Second, Stein was actively soliciting the purchase of Plastic and Products while still employed and an order of Plaintiffs, and was finalizing the purchase even at the time he was executing the Settlement Agreement with Plaintiffs;

e.      Failing to hold in confidence Plaintiffs' Proprietary information by disclosing same to Plastic & Products Marketing;

f.      Disclosing Plaintiffs' proprietary information to third parties, including Plastic Products and Marketing, without Plaintiffs' consent;

g.      Owning, operating, advising, controlling, consulting, investing, and engaging in Plastic & Products Marketing, which is a national business that has, within the 5 year Noncompetition Period conducted business and/or offered to conduct business within a thirty (30) mile radius of the real property located at 3636 West 58th Street, Cleveland, Ohio;

h.      Engaged in practices for the purpose of evading the provisions of the Non-Compete covenant, including, but not limited to purchasing a direct competitor in a location outside of the non-compete, but then using Plaintiffs' confidential customer list to directly solicit business and to make sales and offer products to customers or otherwise conduct a competing business within the thirty (30) mile radius of the real property located at 3636 West 58th Street, Cleveland, Ohio;

i.      Induced or attempt to induce, one or more suppliers, contractors, or customers of Plaintiffs to terminate or adversely change its relationship with Plaintiffs;

> j.      Unlawfully using and disclosing Plaintiffs' confidential and proprietary information to Plastic & Products Marketing; and/or
>
> k.      Unfairly and/or unlawfully competing against Plaintiffs through the use of false and misleading statements with the intent of having Plaintiffs reasonably rely on same and by misappropriating Plaintiffs' confidential and proprietary information and trade secrets to use same to produce the same or substantially similar products without the costs normally associated with producing same and thereby undercutting the Plaintiffs' confidential prices, and/or marketing same directly to Plaintiffs' customers through the unauthorized use of Plaintiffs' confidential customer list.

(*Id*. at ¶ 79.)

Plaintiffs then assert (also in Count I) that "Stein has further breached the implied covenant of good faith and fair dealing." (*Id*. at ¶ 80.) Specifically, Plaintiffs allege:

> 81.     Defendant Stein has intentionally and fraudulently mislead [sic] Plaintiffs as to Defendant's health and intentions as to competing against Plaintiffs to induce Plaintiffs to participate in the business mediation, to purchase his interest in the Plaintiff companies, and/or to enter into the Settlement and Non-Compete Agreements on the terms and conditions stated therein.
>
> 82.     Defendant Stein further acted in bad faith by knowingly acting to purchase a direct competitor of Plaintiffs and intending to directly compete against Plaintiffs while engaging in the business mediation and representing to Plaintiffs that he had no intentions of competing against Plaintiffs or working in the industry and that he was unable to continue working due to his health.

(*Id*. at ¶¶ 81-82.)

In Count II, Plaintiffs allege a claim for Misappropriation of Trade Secrets under Ohio Rev. Code § 1333.61 *et seq*. (*Id*. at ¶¶ 86-107.)

In Count III, Plaintiffs allege a claim for Tortious Interference. (*Id*. at ¶¶ 108-114.) Specifically, Plaintiffs allege that PPM was aware of the existence of (1) the June 2016 Settlement and Non-Competition Agreements between Plaintiffs and Stein, and (2) Plaintiffs' customer relationships and contracts. (*Id*. at ¶¶ 110, 111.) Plaintiffs allege that PPM tortiously interfered with the same by (1) using Plaintiffs' proprietary and confidential information to unfairly compete against

8

Plaintiffs; (2) using Plaintiffs' cooler prototype to develop a product of its own that was substantially similar if not exactly the same; (3) using Plaintiffs' supplier, cost, and pricing proprietary information to undercut Plaintiffs' prices in the market; (4) using Plaintiffs' confidential and proprietary research and development to create the same or substantially similar products without the development costs so as to unfairly compete against Plaintiffs; and/or (5) using Plaintiffs' customer lists to steal customers and/or to otherwise encourage Plaintiffs' customers to not do business with Plaintiffs. (*Id*. at ¶ 112.)

Count IV alleges a claim for fraud in the inducement. (*Id*. at ¶¶ 115-128.) In this Count, Plaintiffs allege that "Defendant Stein knowingly and intentionally made material misrepresentations to Plaintiffs that (1) he had a nervous breakdown; (2) he was unable to continue working due to his health; (3) he had no intention to compete with Plaintiffs; (4) he would never compete with Plaintiffs as that was something he would never do; (5) that he had no intention of working and no ability to do so due to his health; and (6) he wanted to be bought out of the companies because of his failing health." (*Id*. at ¶ 116.) Plaintiffs allege that they justifiably relied on these misrepresentations "in agreeing to purchase [Stein's] interest in the companies, in entering the Settlement agreement and Non-Compete agreement, in allowing Defendant access to confidential and proprietary materials and in not demanding more restrictive covenants for the Non-Compete." (*Id*. at ¶ 121.)

In Count V, Plaintiffs allege a claim for breach of the duty of loyalty and care. (*Id*. at ¶¶ 129-144.) In this Count, Plaintiffs allege that "[i]n the event the Settlement and Non-Competition Agreements are rescinded, Plaintiffs are entitled to damages for Defendant Stein's breach of the duties of loyalty and care as well as the breach of the obligation of good faith and fair dealing." (*Id*.)

9

In Count VI, Plaintiffs allege a claim for conversion based on Stein's alleged failure to promptly return the cooler prototype. (*Id*. at ¶¶ 145-149.)

Finally, in Count VII, Plaintiffs allege that "they have an equitable right to an accounting due to Defendant's theft and unlawful use and disclosure of Plaintiffs' confidential and proprietary information and trade secrets for his own benefit." (*Id*. at ¶ 151.)

Plaintiffs seek the following relief: (1) compensatory damages; (2) rescission of the parties' Settlement Agreement and Non-Compete Agreement; (3) injunctive relief restraining Defendants from using, disclosing, or benefiting in any way concerning Plaintiffs' trade secrets and/or confidential information; (4) punitive damages; (5) pre- and post-judgment interest; and (6) costs. (*Id*. at pp. 30-31.)

Defendants filed an Answer and Counterclaim on December 4, 2018. (Doc. No. 20.) After obtaining leave, Defendants filed an Amended Answer as well as a Counterclaim for breach of the payment provisions of the parties' June 2016 Settlement Agreement. (Doc. No. 82.)

On January 31, 2020, Defendants filed a Motion for Summary Judgment on Plaintiffs' Amended Complaint (Doc. No. 151) and Motion for Summary Judgment on Counterclaim (Doc. No. 152.) On that same date, Plaintiffs filed a combined Motion for Summary Judgment on the Counterclaim and Motion for Partial Summary Judgment as to the Amended Complaint. (Doc. No. 153.) In their respective motions, the parties moved for judgment as to some (but, notably, not all) of Plaintiffs' breach of contract/breach of the duty of good faith and fair dealing claims in Count I. Defendants also moved for summary judgment on Plaintiffs' claims for misappropriation of trade secrets, tortious interference, fraud in the inducement, breach of the duty of loyalty and care,

conversion, and accounting. Lastly, Plaintiffs and Defendants each moved for summary judgment with respect to Defendants' breach of contract counterclaim.

On August 25, 2020, this Court issued its Summary Judgment Order. (Doc. No. 163.) Therein, the Court granted summary judgment in Defendants' favor with respect to Plaintiffs' claims for (1) misappropriation of trade secrets (Count II); (2) fraud in the inducement (Count IV); (3) breach of the duties of loyalty and the duty of care (Count V); and (4) conversion (Count VI).

The Court denied summary judgment with respect to Plaintiffs' breach of contract claim (Count I) as follows. First, the Court denied summary judgment in either parties' favor with respect to Plaintiffs Williams' and AWF's claim that Stein breached Section 3.2(a) of the Non-Competition Agreement.[4] (*Id*. at pp. 17-25.) Specifically, the Court found the terms "Business" and "the sale of commercial wire" to be ambiguous and concluded that "there is a genuine issue of material fact regarding the meaning of the terms 'Business' and 'the sale of commercial wire' in the June 2016 Non-Competition Agreement." (*Id*. at p. 24.)

Second, the Court denied summary judgment in Plaintiffs' favor with respect to Plaintiffs' claim that Stein breached the confidentiality provisions in Section 10 of the Settlement Agreement and Section 2.3(a) of the Non-Competition Agreement. (*Id*. at pp. 25-29.) The Court found that Plaintiffs had established that Stein breached these provisions but that there was a genuine issue of material fact regarding whether Plaintiffs Williams and AWF suffered damages as a result of this breach. (*Id*.)

---

[4] The Court denied Plaintiffs' summary judgment motion on this claim and denied Defendants' summary judgment motion on this claim with respect to Plaintiffs Williams and AWF. However, the Court granted Defendants' summary judgment motion on this claim with respect to Plaintiffs Industries and Holdings. (*Id*. at p. 24.)

Third, the Court denied summary judgment in Plaintiffs' favor with respect to Plaintiffs' claim that Stein breached the cooler prototype provision in Section 15 of the Settlement Agreement.   (*Id*. at pp. 29-33.)  The Court found that "the question of whether Stein used 'best efforts' to return the cooler prototype and whether his performance was within a 'reasonable time' are factual questions for the jury."  (*Id*. at p. 33.)

Because the Court determined that there are genuine issues of material fact regarding whether Stein breached Section 3.2(a) of the June 2016 Non-Competition Agreement and Sections 10 and 15 of the June 2016 Settlement Agreement, the Court further concluded that that summary judgment was not appropriate, for either party, with respect to Plaintiffs' claim for breach of the implied duty of good faith and fair dealing (Count I).  (*Id*. at pp. 33-35.)

Notably, neither party moved for summary judgment in their favor with respect to the other breach of contract sub-claims in Count I, such as Plaintiffs' claims of breach of the non-disparagement provision set forth in Section 2.2 of the June 2016 Non-Competition Agreement; the non-solicitation provision set forth in Section 3.2(B) of the June 2016 Non-Competition Agreement; and/or the "fair business practices" provision set forth in Section 12 of the June 2016 Settlement Agreement.  Thus, these breach of contract sub-claims also remain pending for trial. [5]

Lastly, the Court granted in part and denied in part Defendants' summary judgment motion with respect to Plaintiffs' tortious interference claim (Count III).  Specifically, the Court held that

---

[5] In several filings pending before this Court, Plaintiffs assert that they have pending breach of contract claims relating to Stein's alleged breach of the March 2016 Mediation Agreement.  As discussed in more detail *infra,* the Court rejects this argument.  Count I of the Amended Complaint does not allege a violation of the March 2016 Mediation Agreement. Moreover, in its Summary Judgment Order, this Court found that the June 2016 Settlement Agreement superseded the March 2016 Settlement Agreement.  (Doc. No. 163 at p. 24, fn 13.)

Defendants were entitled to summary judgment in their favor to the extent that this claim is based on Defendant PPM's alleged tortious interference with Plaintiffs' customer contracts and relationships. However, the Court denied summary judgment with respect to Plaintiffs' tortious interference claim to the extent it is based on Defendant PPM's alleged interference with the June 2016 Settlement and Non-Competition Agreements. [6]  (*Id*. at pp. 43-44.)

Trial was initially set for March 15, 2021 but had to be postponed several times due to restrictions and constraints imposed as a result of Covid-19.  On October 8, 2021, the Court set a final pretrial conference on March 22, 2022 and a trial date of April 11, 2022.  (Doc. No. 183.)

Defendants filed seven (7) motions *in limine* on March 1, 2022, including the instant Motion *in Limine* to Exclude Evidence and Argument regarding Dismissed Counts, Motion *in Limine* to Exclude Parol Evidence, and Motion *in Limine* to Exclude Evidence that Defendant Stein Intentionally Sabotaged a Plastics Order.  (Doc. Nos. 184 – 190.)  Plaintiffs filed Briefs in Opposition on March 15, 2022.  (Doc. Nos. 192 - 198.)  In addition, Plaintiffs filed a Motion *in Limine* to Exclude Evidence regarding the Tender Back Rule (Doc. No. 199), which Defendants opposed (Doc. No. 211).[7]

The Court conducted a Final Pretrial Conference on March 22, 2022.  (Doc. No. 215.)  Two days later, on March 24, 2022, Plaintiffs filed a Motion to Continue Trial due to a serious illness in Plaintiffs' lead counsel's family.  (Doc. No. 216.)  Defendants did not oppose the Motion.  (Doc. No.

---

[6] With regard to Plaintiffs' Accounting claim (Count VII), the Court found "[a]s several of Plaintiffs' claims survive summary judgment and will proceed to trial, the Court will address the issue of whether an accounting is necessary or appropriate after this matter has proceeded to trial on the merits."  (*Id*. at p. 56.)

[7] Plaintiffs also filed a Motion for Reconsideration with regard to this Court's Summary Judgment Order granting judgment in Defendants' favor with respect to Plaintiffs' fraud claim.  (Doc. No. 200.)  The Court denied this Motion during the Final Pretrial Conference on March 22, 2022.  (Doc. No.  215.)

217.)  The Court thereafter conducted a telephonic status conference with counsel on March 25, 2022. At that time, the Court reset the trial in this matter for October 11, 2022.  The Court advised the parties, however, that it would proceed to rule on the pending motions *in limine* as soon as reasonably practicable.

Later that same day, Defendants filed a "Motion *in Limine* to Exclude Alleged Misrepresentations that Induced Plaintiffs to Enter into the Settlement Agreement."  (Doc. No. 220.) Plaintiffs filed a brief in opposition on April 8, 2022.  (Doc. No. 222.)

## II.     Legal Standard

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, the practice of ruling on motions *in limine* "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  *See also United States v. Dimora*, 843 F.Supp.2d 799, 816 (N.D. Ohio 2012).  Motions *in limine* allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow the parties to focus remaining preparation time on issues that will in fact be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  *See also Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.")  A motion *in limine* is not, however, intended to resolve non-evidentiary matters prior to trial in civil actions because a mechanism already exists for this purpose, i.e., the summary judgment motion.  *Louzon*, 718 F.3d at 561.  *See also WEL Companies, Inc. v. Haldex Brake Products Corp.*, 467 F.Supp.3d 545, 555 (S.D. Ohio 2020).

Courts should exclude evidence on a motion *in limine* only when it is clearly inadmissible. *See Dimora*, 843 F.Supp.2d at 816; *Indiana Ins. Co. v. General Elec. Co.*, 326 F.Supp.2d 844, 846

(N.D. Ohio 2004).  If the court is unable to determine whether certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context.  *Id*.  Ultimately, the determination whether to grant or deny a motion *in limine* is within the sound discretion of the trial court.  *See Dimora*, 843 F.Supp.2d at 816; *Goldman v. Healthcare Mgmt. Sys., Inc*., 559 F.Supp.2d 853, 858 (W.D. Mich. 2008).  *In limine* rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *See, e.g., Allstate Ins. Co. v. Papanek*, 2020 WL 246418 at * 2 (S.D. Ohio Jan. 16, 2020).

**III.    Analysis**

> **A.    Defendants' Motions *in Limine* to Exclude Evidence regarding Dismissed Counts and to Exclude Evidence regarding Alleged Misrepresentations that Induced Plaintiffs to Enter the Settlement Agreement (Doc. Nos. 188, 220)**

As they seek exclusion of largely the same evidence, the Court will address Defendants' Motions *in Limine* to Exclude Evidence regarding Dismissed Counts (Doc. No. 188) and to Exclude Evidence regarding Alleged Misrepresentations that Induced Plaintiffs to Enter the Settlement Agreement (Doc. No. 220) jointly.  In these Motions, Defendants argue that this Court should preclude Plaintiffs from introducing any testimony or evidence that (1) Stein, Michael Stein, and/or Larry Crystal allegedly made misrepresentations to Plaintiffs to mislead and/or induce them to enter the Settlement Agreement; and (2) "Stein allegedly entered into negotiations to purchase Plastic and Products Marketing, LLC during the negotiation of the Settlement Agreement."  (Doc. No. 188 at p. 1; Doc. No. 220 at p. 1.)  The Court will address these two categories of evidence separately, below.

> **1.    Evidence Regarding Alleged Misrepresentations**

Defendants first argue, generally, that evidence relating to alleged misrepresentations made by Stein, Michael, and Mr. Crystal prior to the formation of the June 2016 Non-Competition and

Settlement Agreements should be excluded because it is relevant to only to Plaintiffs' fraud claim, which was dismissed by this Court in its Summary Judgment Order. (Doc. No. 188 at p. 1.) Citing several unreported district court decisions, Defendants assert that "evidence or argument about the dismissed counts are completely irrelevant" to Plaintiffs' remaining breach of contract and tortious interference claims. (*Id.*) Defendants next argue that such evidence is inadmissible because whether "any sort of fraud occurred" in the *formation or negotiation* of the June 2016 Agreements is not relevant to Plaintiffs' remaining breach of contract and/or breach of implied duty claims. (Doc. No. 220 at p. 1.) Rather, according to Defendants, the only evidence relevant to these claims is evidence relating to Stein's *performance and enforcement obligations* under the June 2016 Non-Competition and Settlement Agreements, which would necessarily post-date the execution of those Agreements. (*Id.* at pp. 4-5.) In sum, Defendants maintain that any evidence regarding the alleged pre-formation statements and/or actions of Stein, Michael, and/or Crystal are simply not relevant to the parties' performance and enforcement of the June 2016 Agreements and, therefore, not admissible. (*Id.*)

In response, Plaintiffs argue that Defendants' Motion should be denied because evidence regarding the alleged misrepresentations of Stein, Michael, and Crystal "applied in many cases to multiple counts and as such, should not be excluded simply because the evidence both applies to a claim upon which summary judgment was granted as well as to an issue that is currently before the Court." (Doc. No. 195 at p. 1.) Plaintiffs maintain that evidence regarding the allegedly fraudulent and misleading misrepresentations at issue is admissible because it is relevant to (1) Stein's credibility; (2) the intent of the parties in the language employed in their agreements; and (3) whether or not the releases are valid. (*Id.* at p. 8.)

16

With regard to the issue of the parties' intent, Plaintiffs assert that this evidence is relevant because it "goes directly to the interpretation of the ambiguous terms of 'Business' and 'sale of commercial wire'" in the June 2016 Non-Competition Agreement.  (Doc. No. 222 at p. 10.) Specifically, Plaintiffs maintain that this evidence is relevant to "the circumstances surrounding the parties at the time the contract was made" and "the objectives the parties intended to accomplish by entering into the contract."  (*Id*.)  Plaintiffs further assert that Stein's alleged misrepresentations are relevant because "the intent of the parties is governed by the duty of good faith and fair dealing and the reasonableness in the enforcement of the contract."  (*Id*. at p. 9.)

Under Federal Rule of Evidence 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible." Fed. R. Evid. 402.  A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Evidentiary rulings are made subject to the district court's sound discretion.  *Frye v. CSX Trans., Inc*., 933 F.3d 591, 598 (6th Cir. 2019).

For the following reasons, the Court finds that evidence regarding the alleged misrepresentations at issue (i.e., representations that Stein intended to retire and would never be able to work again due to his serious health condition) is relevant to Plaintiffs' breach of contract claim. In Summary Judgment Order, this Court expressly found that the terms "Business" and "sale of commercial wire" in Section 3.2(a) of the June 2016 Non-Competition Agreement are ambiguous. (Doc. No. 163 at pp. 21-22.)  The Court, therefore, looked to extrinsic evidence to determine the

17

parties' intent.  (*Id*. at pp. 22-24.)  Noting the parties' competing testimony regarding their respective interpretations of these terms and the circumstances that allegedly existed at the time the June 2016 Agreement was signed, the Court found that there was "a genuine issue of material fact regarding the meaning of the terms 'Business' and 'the sale of commercial wire.'"  (*Id*. at p. 24.)

Because this Court has found a genuine issue of material fact regarding the meaning of these ambiguous contract terms, the "interpretation of the parties' intent is a question to be determined by the trier of fact."  *Schafer v. Soderberg & Schafer*, 196 Ohio App.3d 458, 477, 964 N.E.2d 24 (Ohio App. 6th Dist. 2011).  *See also Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC*, 947 F.Supp.2d 841, 857 (S.D. Ohio 2013).  Where "the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning" then extrinsic evidence is admissible "in an effort to give effect to the parties' intentions." *Huff v. FirstEnergy Corp*., 130 Ohio St.3d 196, 200, 957 N.E.2d 3 (Ohio 2011) (internal quotations omitted). *See also Graham v. Drydock Coal Co*., 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (1996).  "Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement."  *Covington v. Lucia,* 151 Ohio App.3d 409, 414, 784 N.E.2d 186 (Ohio App. 10th Dist. 2003).  *See also Graham*, 667 N.E.2d at 952; *LublinSussman Group LLP v. Lee*, 2018-Ohio-666, 107 N.E.2d 724, 728 (Ohio App. 6th Dist. 2018).  Moreover, "[s]uch evidence may include evidence of trade usage within the industry in question." *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ*., 171 Ohio App.3d 605, 613, 872 N.E.2d 322 (Ohio App. 9th Dist. 2007).  *See also Clinch River Capital Partners, Inc. v. Elsea, Inc.*, 2012 WL 5334307 at * 5 (S.D. Ohio Oct. 26, 2012).

18

Here, the Court finds that evidence regarding the alleged misrepresentations at issue is relevant to the circumstances surrounding the parties at the time the June 2016 Agreements were made, as well as to the parties' objectives in entering into those Agreements.  Specifically, Plaintiffs assert that, because they were assured (by Stein, Michael, and Crystal) that there was no possibility that Stein would ever work again due to his serious health condition, the parties "used a perfunctory form generally used for an employee rather than a form befitting a business partner" and employed "a shorthand reference to 'wire' as the definition of 'Business'" rather than a more detailed definition of that term.  (Doc. No. 222 at p. 11.)  Evidence regarding the alleged misrepresentations, then, is relevant to showing the intent of the parties when they chose the language of the Non-Competition Agreement and their expectations and objectives in entering into that Agreement.  Thus, the Court finds that this evidence is relevant because it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.

Additionally, the Court finds that evidence regarding the alleged misrepresentations may also constitute relevant background information regarding the relationship between the parties and the context for the parties' negotiation and execution of the 2016 Settlement and Non-Competition Agreements.  *See, e.g., JGR, Inc. v. Thomasville Furniture Industries, Inc.*, 370 F.3d 519, 526-527 (6th Cir. 2004) (in breach of contract action, affirming district court's admission of evidence about an alleged prior oral contract between the parties "for the limited purpose of background information"); *Tucker v. Nelson*, 390 F.Supp.3d 858, 861 (S.D. Ohio 2019) ("[E]vidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue").

19

Defendants' argument that evidence regarding the alleged misrepresentations is "completely irrelevant" because it relates to claims that were dismissed, is without merit. District courts have found that, at trial, parties may not reference *claims* that were previously disposed of by the court at the summary judgment stage in the proceedings. *See, e.g.*, *Holloway v. Kings Dodge, Inc.*, 2019 WL 13093580 at * 2 (S.D. Ohio Aug. 23, 2019); *Irvin v. City of Shaker Heights*, 2012 WL 13028095 at *5 (N.D. Ohio May 17, 2012). However, those same courts have recognized "to the extent that there are *facts* that relate to a claim that was dismissed and a claim that is still pending in this action, **those facts and evidence are admissible**." *Irvin*, 2012 WL 13028095 at * 5 (emphasis added). *See also Holloway*, 2019 WL 13093580 at * 2 (same). Here, as set forth above, the Court finds that facts and evidence regarding the alleged misrepresentations at issue are relevant to Plaintiffs' pending breach of contract claim relating to Section 3.2(a) of the June 2016 Non-Competition Agreement. As such, this evidence is not inadmissible simply because it may also relate to Plaintiffs' dismissed fraud claim. Consistent with *Irvin* and *Holloway, supra*, however, the Court finds that the parties may not reference any *claims* that were previously disposed of at the summary judgment stage.

With regard to Defendants' argument that evidence regarding the alleged pre-formation statements and/or actions of Stein, Michael, and/or Crystal is inadmissible because it is not relevant to the parties' performance and enforcement of the June 2016 Agreements, the Court need not reach this argument. Defendants' argument relates to the relevance of this evidence to Plaintiffs' breach of the implied duty of good faith and fair dealing claims.[8] (Doc. No. 220 at PageID#s 9242-9245.)

---

[8] Defendants repeatedly emphasize that Plaintiffs' breach of the implied duty of good faith and fair dealing claim is not an independent, free-standing claim. *See, e.g.*, Doc. No. 220 at PageID# 9242, fn 1. This Court has not held otherwise. Indeed, in its August 25, 2020 Memorandum Opinion & Order, the Court expressly noted that (1) "there is no independent cause of action for breach of the implied duty of good faith & fair dealing apart from a breach of the underlying contract;" and (2) "there is no violation of the implied duty unless there is a breach of a specific obligation imposed by the contract."

However, even assuming *arguendo* that the evidence at issue is not relevant to those particular claims, the Court has found (for all the reasons set forth above) that evidence regarding the alleged misrepresentations at issue constitutes extrinsic evidence that is relevant to Plaintiffs' breach of contract claim, i.e., to the parties' intent in drafting Section 3.2(a) of the June 2016 Non-Competition Agreement.  Thus, regardless of whether such evidence is or is not relevant to Plaintiffs' breach of implied duty claims, this evidence is relevant and admissible for the purpose of Plaintiffs' breach of contract claim.

Accordingly, Defendants' Motions *in Limine* (Doc. Nos. 188, 220) are denied to the extent they seek exclusion of evidence of the alleged misrepresentations at issue.  However, Defendants' Motions are granted to the extent the parties seek to reference or introduce argument regarding any *claims* that were previously disposed of at the summary judgment stage of the instant action.

> **2.    Evidence that Stein allegedly entered into negotiations to purchase an allegedly competing business prior to execution of the June 2016 Agreements**

Defendants also seek to exclude evidence that "Stein allegedly entered into negotiations to purchase Plastics and Products Marketing, LLC during the negotiation of the Settlement Agreement." (Doc. No. 222 at p. 1.)  Defendants assert that this evidence should be excluded because (1) it is only relevant to Plaintiffs' fraud claim, which was dismissed; and (2) it relates solely to alleged actions pre-dating the formation of the June 2016 Agreements and, therefore, is not relevant to Plaintiffs' breach of contract and breach of implied duty of good faith claims.  (*Id.*)

---

(Doc. No. 163 at p. 34-35.)  Because the Court determined that there are genuine issues of material fact regarding whether Stein breached Section 3.2(a) of the June 2016 Non-Competition agreement and Sections 10 and 15 of the June 2016 Settlement Agreement, the Court further found that summary judgment was not appropriate, for either party, with respect to Plaintiffs' claim for breach of the implied duty of good faith and fair dealing.  (*Id.* at p. 35.)

In response, Plaintiffs argue that this evidence is relevant to Stein's post-formation breaches of the confidentiality, non-competition, and "fair business practices" provisions of the June 2016 Settlement and Non-Competition Agreements.  (Doc. No. 222 at pp. 9-12.)  Plaintiffs further assert that the timing of Stein's actions in purchasing a competitor's assets and forming a new competing business are also relevant to their claim that Stein failed to use reasonable efforts to return the cooler prototype in violation of Section 15 of the June 2016 Settlement Agreement.  (*Id.* at p. 12.)  Finally, Plaintiffs again argue that this evidence is relevant to the interpretation of the ambiguous contract terms "Business" and "sale of commercial wire" because it constitutes extrinsic evidence regarding the parties' intent.[9]  (*Id.* at p. 10.)

The Court recited the evidence relevant to this issue in its summary judgment opinion, as follows:

> [B]etween the date Stein left AWF in July 2015 and the parties' mediation in March 2016, Plaintiffs Williams and Monroe communicated with Stein's son Michael regarding a potential buy-out of Stein's interests. (Williams Aff. at ¶ 12; Monroe Aff. at ¶ 19.)  *** Michael [] allegedly told them that Defendant Stein wanted to retire and move to Florida, and that "his father was too concerned about his physical and mental well-being and was in no shape to ever work again." (Williams Aff. at ¶ 15, 18.)  *See also* Monroe Aff. at ¶ 15.
>
> In October 2015, however, Stein "started feeling better" and began to explore other business opportunities. (Stein Depo. at Tr. 126.) Specifically, Stein began evaluating a number of different types of companies to possibly purchase, including pharmacies, food service equipment companies, and online retailers. (Doc. No. 151-11.) ***
>
> In January 2016, Stein reached out for information regarding Plastics & Products Marketing, LLC, a Florida company owned by Lynne Boykin (hereinafter referred to

---

[9] Plaintiffs also argue that this evidence is relevant to their "pending" breach of contract claim for Stein's alleged breach of Section 8 of the March 2016 Mediation Agreement. (Doc. No. 222 at p. 9.)  For the reasons discussed *infra*, the Court rejects this argument.

as "Boykin Manufacturing").[10] (Stein Depo. at Tr. 13, 15.)  Specifically, in early January 2016, Stein contacted the broker representing Boykin Manufacturing and stated, "I am currently in the process of selling my interest in two companies in the area and am looking for opportunities such as this in Florida. This might be a good fit for me." (Doc. No. 153-24.) Stein returned an executed non-disclosure agreement, after which the broker sent Stein financial information regarding Boykin Manufacturing. (Doc. Nos. 153-24, 153-26.) On January 19, 2016, Stein had a telephone conference with Lynne Boykin. (Stein Depo. at Tr. 16; Deposition of Lynne Boykin (Doc. No. 129-1) at Tr. 120-121.)

On January 22, 2016, Stein, through counsel, made a demand for mediation and arbitration to discuss a buy-out of his interests in AWF, Industries, and Holdings. The parties and their counsel engaged in formal mediation proceedings on March 18 and 23, 2016. (Doc. No. 153-30.) At the conclusion of the March 23, 2016 mediation, the parties reached an agreement and executed a "short-form" Settlement Agreement (hereinafter referred to as "the March 2016 Agreement"). (*Id.*) ***

Between March and June 2016, the parties, through counsel, exchanged drafts of a formal Settlement Agreement. [footnote omitted] During this time period, Defendant Stein continued to pursue his interest in purchasing Boykin Manufacturing. (Doc. Nos. 153-33, 153-34.) On May 29, 2016, Stein and Boykin signed a formal Letter of Intent for the purchase and sale of Boykin Manufacturing. (Doc. No. 153-34.) Williams and Monroe testified that they were not aware that he was pursuing any business opportunities, believing that he intended to retire for health reasons. (Williams Depo. (Doc. No. 135-1) at Tr. 143-144; Monroe Depo. (Doc. No. 140-1) at Tr. 69-71.)

One month later, on June 27, 2016, Stein and Plaintiffs executed a formal (1) Settlement Agreement and Mutual Release, and (2) Non-Competition Agreement. (Doc. Nos. 153-36, 153-37.) ***

At some point thereafter, Stein formed Defendant PPM in Florida. (Stein Depo. at Tr. 19-20.) On January 31, 2017, Defendant PPM and Boykin Manufacturing executed an Asset Purchase Agreement for the purchase and sale of the assets of Boykin Manufacturing d/b/a/ Plastics & Products Marketing.  (Doc. No. 153-40.)

(Doc. No. 163 at pp. 6-11.)

---

[10] When Ms. Boykin operated this company, it was called Plastics & Products Marketing. After it was acquired by Defendant Stein, he operated it under the name Plastics and Products Marketing, LLC ("PPM"), which is a named Defendant in the instant action. For ease of reference, the Court will refer to the company owned by Ms. Boykin as "Boykin Manufacturing" and will refer to the company later owned by Defendant Stein as PPM.

For the following reasons, the Court finds that evidence that Stein engaged in negotiations to purchase Boykin Manufacturing prior to June 2016 is relevant and admissible to Plaintiffs' claims that Stein breached the confidentiality and cooler prototype provisions of the June 2016 Agreements. Specifically, evidence that Stein was engaged in negotiations to purchase the assets of a competing company before he signed the June 2016 Agreements, is relevant to Plaintiffs' claims that Stein did not use "best efforts" to return the cooler prototype as required by Section 15 of the June 2016 Settlement Agreement.[11] This evidence is also relevant to Plaintiffs' claims that Stein breached the confidentiality provisions of the June 2016 Agreements as it may tend to show Stein's incentive for allegedly retaining and improperly using Plaintiffs' confidential information under those Agreements. Finally, this evidence is also relevant background information regarding both Plaintiffs' breach of contract claims and tortious interference claims in that it explains and provides context for the relationship of the parties. *See, e.g., Tucker*, 390 F.Supp.3d at 861.

Accordingly, Defendants' Motions *in Limine* (Doc. Nos. 188, 220) are denied to the extent they seek the exclusion of evidence that Stein allegedly entered into negotiations to purchase an allegedly competing business prior to execution of the June 2016 Agreements.

**B.      Defendants' Motion *in Limine* to Exclude Parol Evidence (Doc. No. 190)**

Defendants next move to exclude the admission of parol evidence at trial.  (Doc. No. 190 at p. 1.)  "The parole evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Williams v. Spitzer Autoworld Canton, LLC*, 122 Ohio St.3d 546, 913 N.E.2d 410, 2009-

---

[11] Section 15 provides that "Stein will utilize his best efforts to locate and return a cooler prototype to the parties."  (Doc. No. 19-1 at PageID# 230.)

Ohio-3554 (Ohio 2009).  If, however, "a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994).  *See also First National Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, 284 (Ohio App. 9th Dist. 2017) (same); *SPG, Inc. v. First St. Dev., LLC*, 2016-Ohio-2824, 64 N.E.3d 340, 349 (Ohio App. 5th Dist. 2016) ("When terms of an agreement are ambiguous, parol evidence may be used to explain the understanding of the parties at the time the agreement was entered into.")  Parol evidence is used only to interpret the terms, and not to contradict the terms.  *See Schempp v. GC Acquisition, LCC*, 161 F.Supp.3d 584, 590 (N.D. Ohio 2014) ("Parol, or extrinsic, evidence is only admissible if the terms of the contract are ambiguous, and can only be used to interpret, not contradict, the express language of the contract.")

Defendants raise several arguments in support of their Motion, each of which Plaintiffs oppose.  The Court will address Defendants' argument separately, below.

### 1. Request to exclude all parol evidence, even with respect to Section 3.2(a) of the June 2016 Non-Competition Agreement

Defendants first argue that Section 3.2(a) of the Non-Competition Agreement is not, in fact, ambiguous and, therefore, this Court should not allow the admission of **any** parol and/or extrinsic evidence at trial.  (Doc. No. 190 at PageID# 8921.)  This argument is rejected.  As discussed at length above, this Court has already held, in its Summary Judgment Order, that the terms "Business" and "sale of commercial wire" in Section 3.2(a) are ambiguous.  (Doc. No. 163 at p. 22.)  In that same opinion, the Court noted that "'[w]hen terms of an agreement are ambiguous, parol [or extrinsic] evidence may be used to explain the understanding of the parties at the time the agreement was entered into.'"  (*Id*. at p. 23) (quoting *SPG, Inc.*, 64 N.E.3d at 349).  The Court looked to extrinsic evidence to determine the parties' intent and found that there was "a genuine issue of material fact

regarding the meaning of the terms 'Business' and 'the sale of commercial wire.'" (*Id*. at pp. 22-24.) The Court subsequently denied Defendants' Motion to Reconsider the Court's Ruling on this very issue. (Doc. No. 177.)

Defendants' Motion *in Limine* essentially asks the Court, once again, to reconsider its decision that the terms "Business" and "sale of commercial wire" are ambiguous. The Court will not do so. A motion *in limine* is not the proper vehicle to seek reconsideration of a court's decision on a non-evidentiary issue or to otherwise reassert a legal argument made in a summary judgment motion. *See, e.g., Louzon*, 718 F.3d at 561 (finding that a motion *in limine* is not intended to resolve non-evidentiary matters prior to trial because "a mechanism already exists in civil actions" to resolve such matters—the summary judgment motion); *WEL Companies, Inc.*, 467 F.Supp.3d at 555 (noting that "[t]he Sixth Circuit has recognized that motions *in limine* that are essentially motions for summary judgment should not be granted"); *SPX Corp. v. Bartec USA, LLC*, 2008 WL 3850770 at * 3 (E.D. Mich. Aug. 12, 2008) ("[M]otions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.") Defendants' argument that Section 3.2(a) of the June 2016 Non-Competition Agreement is unambiguous and "as a result, parol or extrinsic evidence is inadmissible" presents a non-evidentiary legal issue that was already decided during summary judgment proceedings. This is an improper use of a motion *in limine*. Defendants' argument is rejected.

### 2.     Request to call Plaintiffs' Counsel to testify at trial

Defendants next state that "[i]f the Court does find that extrinsic evidence is admissible, Defendants will likely be forced to call Plaintiffs' trial counsel, Joseph Burke, the scrivener of the contract, to testify." (Doc. No. 190 at PageID# 8922.) Defendants argue that, as the drafter of the June 2016 Agreements, Mr. Burke's testimony is relevant to the meaning of Section 3.2(a) because

26

"if parol evidence . . . does not clear up any alleged ambiguity, then the ambiguity should be interpreted against the drafter."  (*Id.*)  Thus, Defendants seek an advance ruling that they will be permitted to call Mr. Burke to the stand and question him before the jury.  (*Id.*)  In response, Plaintiffs argue that "Defendants' threats to call Joseph Burke as the scrivener of the contract for their allegation that the contract must be construed against the drafter is unfounded, as the documents were mutually drafted between the parties and as this Honorable Court has already held that *Contra Proferentum* does not apply to this case." (Doc. No. 193 at p. 11.)

The Court is not persuaded that Mr. Burke's testimony is relevant to the meaning of the terms "Business" and "sale of commercial wire."  Mr. Burke is not a party to either the June 2016 Settlement Agreement or Non-Competition Agreement.  Moreover, any communications Mr. Burke may have had with his clients about their understanding or intent regarding the meaning of Section 3.2(a) is likely inadmissible in light of the attorney client privilege.  Indeed, Defendants have not argued or demonstrated otherwise.  Finally, Plaintiffs are correct that, in its summary judgment ruling, this Court already considered and rejected Defendants' argument that rule of *contra proferentum* should be applied.  *See* Doc. No. 163 at p. 22, fn 11.[12]

### 3.      Request to Exclude Certain Parol Evidence

Defendants next argue that, if the Court permits the introduction of parol evidence, it should exclude (1) evidence that Plaintiffs would not have signed the agreements if they had known Stein

---

[12] Specifically, this Court held as follows: "Defendants argue that, because Plaintiffs drafted the Agreement, it should be construed against them under the doctrine of *contra proferentem*. As the Sixth Circuit has explained, the 'contra proferentem' canon is meant primarily for cases 'where the written contract is standardized and between parties of unequal bargaining power.' *Yellowbook,Inc. v. Bradeberry*, 708 F.3d 837, 847 (6th Cir. 2013) (quoting *Savedoff*, 524 F.3d at 764). Here, as in *Yellowbook*, the parties' Settlement and Non-Competition Agreements were not nonnegotiable contracts of adhesion, and Plaintiffs are sophisticated businesses that were represented by counsel throughout the negotiations. Accordingly, the Court declines to apply the rule of *contra proferentem* herein." (*Id.*)

was allegedly in the process of purchasing Boykin Manufacturing; (2) the "short-form" mediation settlement agreement; and (3) evidence that does not relate to the meaning of the phrase "sale of commercial wire." (Doc. No. 190 at p. 3.)  The Court will address each of these categories of evidence separately, below.

<b>a.    Evidence that Plaintiffs would not have signed the June 2016<br>Agreements if they had known Stein had purchased Boykin<br>Manufacturing</b>

Defendants assert that the Court should exclude evidence that Plaintiffs would not have signed the June 2016 Settlement and Non-Competition Agreements if they had known Stein had purchased Boykin Manufacturing because "this evidence cannot help interpret the meaning of the phrase 'the sale of commercial wire.'" (Doc. No. 190 at PageID# 8923.)  Defendants argue that this evidence does not go to "the **meaning** of the contract but to whether Plaintiffs would have **executed** the contract" in the first instance. (*Id.*) (emphasis in original).  Thus, Defendants assert that this evidence "does nothing to help a jury understand what the parties understood 'the sale of commercial wire' to mean" and, therefore, is not relevant.  (*Id.*)

In response, Plaintiffs argue that this evidence is relevant because it "go[es] to why the words used [in Section 3.2(a)] were selected by the parties and as to the intent of the parties." (Doc. No. 193 at PageID# 8947.)  Plaintiffs explain as follows:

> [W]hether or not Plaintiffs' [sic] would have signed a contract that would have only covered sales of commercial wire (which Plaintiffs did not sell and would have achieved no benefit), as alleged by Stein, or one which only covered products made only of wire (which was the failing product line of Wire), as alleged alternatively by Stein, and which did not include plastic or mixed plastic and wire components (which was where the profits were projected), is most certainly relevant evidence of the intent of the parties as to the meaning of the words used to define Business. If Plaintiffs would not have executed a contract covering simply the sale of wire or limited to the sale of products made only with wire, then the parties most certainly did not intend that the term "sale of commercial wire" to be limited to such items and most certainly

28

would not have understood that term to be so limited when they executed the agreement.

(*Id*. at PageID#8948.)

As an initial matter, the Court finds that Plaintiffs have failed to address the precise category of evidence that Defendants seek to exclude. Here, Defendants do not seek to exclude evidence regarding whether or not Plaintiffs would have signed a contract that only covered sales of commercial wire, or covered products made only of wire (and did not include plastic or mixed plastic and wire components.) Rather, Defendants seek to exclude evidence that Plaintiffs would not have signed the June 2016 Agreements if they had known that Stein was simultaneously negotiating the purchase of Boykin Manufacturing. Plaintiffs' brief in opposition could be construed as arguing that such evidence is relevant because it shows that they would have would not have used the existing language in Section 3.2(a) if they had known that Stein was in the midst of negotiating the purchase of Boykin Manufacturing. However, the Court is not persuaded that evidence regarding what Plaintiffs would have done had they known about Stein's activities is relevant to determining the parties' intent with regard to the ambiguous terms in the contract at the time the June 2016 Agreements were executed.

In this regard, the Court notes that the evidence sought to be excluded here is different in nature than the evidence which this Court has found relevant and admissible in Section III.A, above. The Court determined, *supra*, that evidence regarding alleged misrepresentations that Stein intended to retire and would never work again is relevant extrinsic evidence because (1) Plaintiffs were aware of these representations; and (2) the representations allegedly influenced the specific language chosen by the parties in Section 3.2(a). By contrast, it is undisputed that Plaintiffs were unaware that Stein was negotiating the purchase of Boykin Manufacturing when the parties executed the June 2016 Non-

29

Competition Agreement.  Thus, Plaintiffs cannot convincingly argue (as they did with regard to evidence of the alleged misrepresentations) that evidence of Stein's actions influenced the specific language that Plaintiffs chose to use in the Agreements.  Moreover, Plaintiffs have not clearly or sufficiently argued that, if they had known about Stein's actions, they would have chosen different language in Section 3.2(a).  Rather, Plaintiffs have argued that they would not have signed the June 2016 Agreements at all.  The Court is not persuaded that evidence that Plaintiffs would not have signed the June 2016 Agreements if they had been aware of Stein's negotiations to purchase Boykin Manufacturing, is relevant to what the parties intended the ambiguous terms in Section 3.2(a) to mean.[13]

Accordingly, the Court agrees with Defendants that evidence regarding whether Plaintiffs would have signed the June 2016 Agreements if they had known about Stein's actions does not constitute relevant parol evidence regarding the parties' intent as to the meanings of the terms "Business" and "sale of commercial wire."   It is possible, however, that evidence regarding whether Plaintiffs would have signed the June 2016 Agreements if they had known about Stein's actions, is relevant or admissible for another reason(s).  If Plaintiffs believe there is an alternative basis for admission of this evidence, Plaintiffs may make an appropriate proffer at trial outside the presence of the jury and the Court will consider its admissibility at that time.

### b.      Evidence of the March 2016 Mediation Agreement

---

[13] This Court has also found, *supra,* that evidence that Stein engaged in negotiations to purchase Boykin Manufacturing prior to June 2016 is relevant to Plaintiffs' breach of contract claims relating to the confidentiality and cooler prototype provisions of the June 2016 Agreements.  However, that is a different issue from the relevance of evidence regarding whether Plaintiffs would have signed the Agreements in the first instance if they had known about Stein's actions. Moreover, Plaintiffs have not argued that the evidence sought to be excluded in the instant motion is relevant to their claims for breach of the confidentiality and cooler prototype provisions of the June 2016 Agreements.

Defendants next argue that the Court should exclude all evidence regarding the parties' March 2016 Mediation Agreement because (1) Plaintiffs do not allege a breach of that Agreement in the Amended Complaint; and (2) the June 2016 Settlement and Non-Competition Agreements supersede the March 2016 Mediation Agreement. (Doc. No. 190 at p. 5.)

In response, Plaintiffs argue that they "have a pending claim for breach of this Mediation Agreement as Stein managed to breach this agreement as well for the short time it was pending before the parties decided to enter into a more formal Settlement Agreement." (Doc. No. 193 at p. 10.) Plaintiffs further assert that the June 2016 Agreements did not release "any prior violation of the Mediation Agreement (and even if a release existed, it would be a material question of fact for a jury to determine whether or not such release was void due to Stein's fraud and other wrongful actions)." (*Id.*) Plaintiffs maintain that "a breach of the Mediation Agreement remains pending for adjudication by the trier of fact [and, therefore] the contract itself cannot be excluded as a matter of law." (*Id.*)

The Court rejects Plaintiffs' argument that they have a pending claim for breach of the March 2016 Mediation Agreement. Although Plaintiffs mention the March 2016 Mediation Agreement in the factual allegations section of their Amended Complaint, they do not direct this Court's attention to any specific paragraph of the Amended Complaint which purports to assert a claim for breach of contract relating to that Agreement. To the contrary, Count I of the Amended Complaint references the "written Settlement and Non-Competition Agreements," which are identified only as the June 2016 Settlement and Non-Competition Agreements. (Doc. No. 19 at ¶ 70; Doc. Nos. 19-1, 19-2.) Paragraphs 72 through 78 of Count I then expressly reference and quote specific provisions of the June 2016 Agreements only. (Doc. No. 19 at ¶¶ 72 through 78.) Paragraph 79 goes on to detail (in eleven subparagraphs) the specific actions allegedly taken by Stein that constitute a breach of these

provisions. (*Id*. at ¶ 79.) None of these subparagraphs reference the March 2016 Mediation Agreement. (*Id*.) Notably, nowhere in Count I do Plaintiffs assert that Stein breached the March 2016 Agreement during the period of time prior to the execution of the June 2016 Agreements.

In light of the above, the Court finds that Plaintiffs have failed to demonstrate that they have a "pending claim" for breach of contract relating to the March 2016 Mediation Agreement.[14] Thus, Defendants' Motion is granted to the extent that it seeks to prevent Plaintiffs from referencing any such pending claim. The Court declines, however, to bar evidence regarding the existence of the March 2016 Mediation Agreement. Evidence that the parties engaged in the business mediation and signed a "short form" mediation agreement in March 2016 is relevant background evidence that provides context for the subsequent execution and negotiation of the parties' June 2016 Settlement and Non-Competition Agreements. Accordingly, the Court denies Defendants' Motion to the extent it seeks to exclude (1) evidence that the parties engaged in the business mediation; and (2) the March 2016 Mediation Agreement itself.

### c. Parol Evidence that does not relate to the meaning of the phrase "sale of commercial wire"

Lastly, Defendants argue, generally, that "the Court should only admit parol evidence to the extent it helps explain the meaning of the phrase 'sale of commercial wire.'" (Doc. No. 190 at p. 5.) Since the Court did not find any other provision of the June 2016 Agreements to be ambiguous,

---

[14] The Court notes that Count I of the Amended Complaint does reference the parties' "business mediation" in the context of Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. Specifically, in Paragraph 81, Plaintiffs allege that Stein breached the implied covenant of good faith and fair dealing, in part, by "intentionally and fraudulently mislead[ing] Plaintiffs as to Defendant's health and intention as to competing against Plaintiffs to induce Plaintiffs to participate in the business mediation . . ." (*Id*. at ¶ 81.) Likewise, in Paragraph 82, Plaintiffs allege that Stein breached the implied covenant of good faith and fair dealing by "knowingly acting to purchase a direct competitor of Plaintiff's [sic] and intending to directly compete against Plaintiffs." (*Id*. at ¶ 82.) Neither of these paragraphs, however, assert that Stein breached any specific provision of the March 2016 Mediation Agreement.

Defendants assert that "the Court should only admit parol evidence to the extent it helps interpret the one disputed phrase in the Non-Competition Agreement." (*Id.*)  Plaintiffs argue that Defendants' request should be denied because it is vague and nothing more than an attempt to "trick the Court into limiting the parol evidence in a manner contrary to Ohio law."  (Doc. No. 193 at p. 11.)

The Court is unable to resolve Defendants' argument because Defendants have not identified any particular piece of evidence that they believe should be excluded.  As a result, the Court cannot assess the likely relevancy or prejudice of the challenged evidence.  Rather than issuing a blanket ruling on evidence not yet identified and arguments not yet fully developed, the Court denies this part of Defendants' Motion without prejudice.  *See Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975) (cautioning against "orders *in limine* that exclude broad categories of evidence"); *Jackson v. O'Reilly Automotive Stores, Inc.,* 131 F.Supp.3d 756, 760 (M.D. Tenn. 2015) (denying motion *in limine* where plaintiff failed to identify any specific piece of evidence to be excluded); *Gresh v. Waste Services of America, Inc.,* 738 F.Supp.2d 702, 707-708 (E.D. Ky. 2010) (denying motion *in limine* as "inappropriately vague"); *Phoenix v. Esper*, 2020 WL 3798862 at * 5 (E.D. Ky. July 7, 2020) ("'A motion *in limine* may be denied for being vague and overbroad'") (quoting *McCoy v. Kazi*, 2010 WL 11465179 at * 2 (C.D. Cal. Aug. 27, 2010)).  The Court will address any relevance or prejudice objections during the course of trial.

Accordingly, Defendants' Motion *in Limine* to Exclude Parol Evidence (Doc. No. 190) is granted in part and denied in part, as set forth above.

**C.**   **Motion *in Limine* to Exclude Reference, Testimony or Evidence, of Any Kind, of Plaintiffs' Claim that Defendant Stein Intentionally Sabotaged a Plastic Order Received by Plaintiff AWF (Doc. No. 187)**

33

Defendants next ask this Court to exclude any testimony or evidence related to the claim that Stein intentionally sabotaged a plastics order received by Plaintiff AWF prior to the execution of the June 2016 Settlement Agreement. (Doc. No. 187.) The facts relevant to this motion were summarized in the Court's summary judgment opinion, as follows:

> During this same general time period [i.e., June to July 2015], Stein was working with a plastics broker named Joseph Winiarski [fn omitted] to produce a large order of fabricated plastic racks for a customer called International Delight. (Deposition of Joseph Winiarski (Doc. No. 132-1) at Tr. 28-34.) Winiarski testified that he designed this product, and that AWF was supposed to manufacture it and deliver it to International Delight. (*Id.* at Tr. 31-32.) On July 15, 2015, Stein sent an email to Joseph Winiarski, requesting that he submit a purchase order for this project. (Doc. No. 153-12.) *See also* Winiarski Depo. at Tr. 28-34. According to Williams and Monroe, AWF's ability to successfully fill this order was heavily dependent on Stein's knowledge of the manufacturing process for this specific product. *See* Williams Depo. (Doc. No. 135-1) at Tr. 26-28.
>
> The following day, however, Stein did not come to work. On July 17, 2015, Stein executed a Power of Attorney, authorizing his son, Michael Stein, to make decisions for him concerning his real and personal property. (Doc. No. 153-13.) On July 18, 2015, Defendant Stein presented to the emergency room with complaints of depression, anxiety, difficulty concentrating, feelings of hopelessness, and suicidal ideation. (Doc. No. 153-16.) He was subsequently admitted to the psychiatric division of Lutheran Hospital and treated with counseling and medication. (Doc. Nos. 153-16, 153-18.) Stein was discharged on July 24, 2015 with diagnoses of generalized anxiety disorder, mood disorder, and major depressive disorder, single episode, severe without psychotic symptoms. (Doc. No. 151-8.)
>
> ***
>
> Stein never returned to work at AWF, Industries, or Holdings. Williams and Monroe testified that, due in part to Stein's absence, [fn omitted] the large plastics order for International Delight was a complete failure. (Williams Depo. (Doc. No. 135-1) at Tr. 26-27.) Williams explained that he "had no experience in manufacturing the product" and, although they tried to fill the order, they "failed miserably."[15] (*Id.* at Tr. 26-27.)

---

[15] As James Monroe explained: "In 2015 . . . we were processing an order for approximately $70,000 that was a plastic order that came from Joe Winiarski to [AWF] and we were in the process of fulfilling that order. Unfortunately, we weren't able to do so because Jeff [Stein] and Rod Miller left . . . and we did not have the expertise nor the knowledge to complete that order. We did the best we could with the information we had. We shipped it. Half of it came back. We fixed it. We reshipped it, which was all at our cost, which I couldn't even speculate on the cost of that." (April 17, 2019

> Monroe also testified that, in August 2015, they lost an "absolute[ly] massive opportunity" to sell to United Dairy Farmer and Speedway because Stein was not available to assist in responding to a pricing request. (April 17, 2019 Deposition of James Monroe (Doc. No. 140-1) at Tr. 109.)

(Doc. No. 163 at pp. 5-6.)

Defendants argue that testimony or evidence related to the above should be excluded because any claim based on the June/July 2015 failed plastics order is barred by the mutual release provision of the June 2016 Settlement Agreement.  (Doc. No. 187.)  Defendants assert that "this Court found when it ruled on the parties' competing summary judgment motions [that] the Settlement Agreement contains a clear and unambiguous release of Plaintiffs' claims against Stein 'arising out Stein's ownership and employment with" Plaintiffs.  (*Id*. at p. 4) (citing Doc. No. 163 at p. 46.)  Defendants argue that any testimony or evidence relating to the failed plastics order is, therefore, irrelevant because it occurred before the execution of the June 2016 Settlement Agreement and was released. (*Id*.)  Defendants further argue (without explanation) that any such evidence would be prejudicial to Defendants and confuse the jury.  (*Id*.)

Plaintiffs argue that evidence regarding the failed plastics order is directly relevant to Plaintiffs' tortious interference and breach of contract claims.  (Doc. No. 192.)  Plaintiffs allege that, after the "catastrophic design failure" in June/July 2015, "Nestle and International Delight withdrew their business from Plaintiffs and moved their business to Stein's new company, [Defendant PPM], after Defendants used their knowledge of Plaintiffs' confidential information concerning the relationship and disparaged Plaintiffs to the customer."  (*Id*. at p. 2.)  Plaintiffs therefore assert that

---

Deposition of James Monroe (Doc. No. 140-1) at Tr. 24-25.) Winiarski testified similarly, stating "It was a sh** circus. Falling apart. I mean, the displays got more travel time there and back. Customers were getting pissed at me, telling me no more orders. It was a disaster. Total disaster." (Winiarski Depo. at Tr. 83.)

35

evidence regarding Stein's allegedly intentional sabotage of the plastics order in June/July 2015 is relevant to Plaintiffs' claims that Stein breached the confidentiality and non-disparagement provisions of the June 2016 Agreements because it shows both the breach itself as well as Stein's motive and opportunity to commit the breach.  (*Id*. at pp. 6-7.)  Plaintiffs further assert that this evidence is directly relevant to Plaintiffs' claims that PPM tortiously interfered with the June 2016 Agreements because it allowed Stein to breach those Agreements by misusing Plaintiffs' confidential information and disparaging Plaintiffs to its former customers.  (*Id*.)

Plaintiffs next argue that the issue of whether Plaintiffs' claims relating to the failed plastics order are barred by the release was not raised in any summary judgment motion nor was it ruled on by the Court. (*Id*. at p. 7.)  Plaintiffs assert that their claims are not, in fact, barred by the release because "Stein continued his scheme to sabotage Plaintiffs' relationship with Nestle and International Delight following his signatures on the [June 2016] agreements and in violation of the terms and conditions of the aforementioned agreements."  (*Id*. at p. 8.)  Lastly, Plaintiffs argue that there are jury questions as to whether the release is valid and whether Plaintiffs' claims relating to the failed plastics order fall within that release.  (*Id*. at pp 8-9.)

For the following reasons, Defendants' Motion is denied.  As an initial matter, the Court disagrees with Defendants that this Court already determined, in its Summary Judgment Order, that Plaintiffs' breach of contract claims relating to the failed plastics order are barred by the mutual release provision in the June 2016 Settlement Agreement.  While the Court quoted the language of the release on page 46 of its Summary Judgment Order, the Court only considered the applicability of the release to Plaintiffs' fraud in the inducement claim.  The Court quoted Ohio law that "a releasor may not attack the validity of a release for fraud in the inducement unless he first tenders back the

consideration he received for making the release." (Doc. No. 163 at p. 47) (quoting *Berry v. Javitch, Block & Rathbone, LLP*, 127 Ohio St.3d 480, 940 N.E.2d 1265, 1270 (2010)).  The Court then concluded that the tender back requirement applied to Plaintiffs and, further, that Plaintiffs had failed to satisfy that requirement.  (*Id*. at pp. 48-51.)  The Court found that Plaintiffs' fraud in the inducement claim was barred by the release and, therefore, Defendants were entitled to summary judgment in their favor with respect to that particular claim.  (*Id*.)

Defendants did not, however, move for (and the Court did not consider whether Defendants were entitled to) summary judgment in their favor on the grounds that Plaintiffs' breach of contract claims based on the failed plastics order were likewise barred by the release.  As noted *supra*, in Count I, Plaintiffs expressly allege a claim for breach of the disparagement and non-solicitation provisions of the June 2016 Agreements based on the failed plastics order, as follows:

> 79.    Defendant Stein has breached the Settlement and Non-Competition Agreements by, amongst other ways:
>
> \*\*\*
>
> d.    Disparaging/Defaming Plaintiffs to Plaintiffs' customers in two ways: while Stein was still employed and running Advance Wire he took a large order, at a low price, and then abandoned the company while the product was in production. As a result, 30-40% of the end product was nonconforming and the customer, Nestle, refused to pay Advance Wire generating a $76,000.00 loss. After Stein purchased his new company, he solicited the same business providing the same product produced by Advance Wire from Nestle. Second, Stein was actively soliciting the purchase of Plastic and Products while still employed and an order of Plaintiffs [sic], and was finalizing the purchase even at the time he was executing the Settlement Agreement with Plaintiffs

(Doc. No. 19 at ¶ 79(d)).

Defendants' argument that Plaintiffs' breach of contract claims relating to the failed plastics order are barred by the release provisions of the June 2016 Settlement Agreement presents a non-

evidentiary legal issue that should have been raised during summary judgment proceedings. Defendants had every opportunity to raise this argument in their summary judgment motion but failed to do so.  The Court finds that Defendants may not use the instant Motion *in Limine* to assert this argument now.  *See, e.g., Louzon*, 718 F.3d at 561; *WEL Companies, Inc.*, 467 F.Supp.3d at 555. Defendants' argument is, therefore, rejected.

Moreover, even assuming *arguendo* that the release barred any breach of contract claims for Stein's actions prior to June 2016, the Court agrees with Plaintiffs that evidence regarding the failed plastics order is nonetheless relevant to their breach of contract and tortious interference claims for Stein's actions after the execution of the June 2016 Settlement Agreement.  Specifically, Plaintiffs claim that, after the parties executed that Agreement, Stein used his confidential knowledge regarding the failed plastics order to disparage Plaintiffs to Nestle and International Delight and to solicit business for PPM from those customers.  Evidence regarding Stein's knowledge of and involvement in the failed plastics order in June/July 2015, then, is relevant to Plaintiffs' claims that he subsequently used confidential information about that incident to breach the non-disparagement and non-solicitation provisions of the June 2016 Agreements.  The Court further finds that Defendants have not sufficiently argued or demonstrated that admission of this evidence would be unduly prejudicial or would cause confusion for the jury.

Lastly, the Court feels compelled to address Defendants' assertion that, because of this Court's summary judgment ruling, "Plaintiffs' claims are limited to the claim that Defendants breached the Settlement Agreement and Mutual Release by violating the non-competition agreement, selling plastic products within thirty (30) miles of Cleveland, Ohio, misappropriating trade secrets, and failing to return a cooler prototype that neither PPM nor Plaintiffs have ever sold." (Doc. No. 187

38

at p. 4.)  This is simply not an accurate description of the remaining claims in this action.  As has been discussed extensively above, the Amended Complaint asserts numerous claims for breach of contract (including claims for breach of the non-disparagement, non-solicitation, and "fair business practices" provisions of the June 2016 Settlement Agreements) which the parties did not address in their motions for summary judgment.  These claims, therefore, remain pending for trial, in addition to Plaintiffs' claims for breach of Section 3.2(a) of the June 2016 Non-Competition Agreement, breach of Sections 10 and 15 of the June 2016 Settlement Agreement, breach of the duty of good faith and fair dealing, and tortious interference based on PPM's alleged interference with the June 2016 Agreements.[16]

Accordingly, and for all the reasons set forth above, Defendants' Motion *in Limine* to Exclude Reference, Testimony or Evidence, of Any Kind, of Plaintiffs' Claim that Defendant Stein Intentionally Sabotaged a Plastic Order Received by Plaintiff AWF (Doc. No. 187) is denied.

**IV.  Conclusion**

For all the reasons set forth above, Defendants' Motions *in Limine* to Exclude Evidence and Argument regarding Dismissed Counts (Doc. No. 188) and to Exclude Evidence regarding Alleged Misrepresentations (Doc. No. 220) are granted in part and denied in part as set forth herein. Defendants' Motion *in Limine* to Exclude Parol Evidence (Doc. No. 190) is granted in part and denied in part as set forth herein.  Defendants' Motion *in Limine* to Exclude Evidence of Plaintiffs' Claim that Stein Intentionally Sabotaged a Plastics Order received by Plaintiff AWF (Doc. No. 187) is denied.

---

[16] While Defendants state that there is a pending claim for misappropriation of trade secrets, this Court granted summary judgment in Defendants' favor with respect to Plaintiffs' claim for misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code 1333.61, *et seq.*  (Doc. No. 163 at pp. 35-41.)

**IT IS SO ORDERED.**


                                     *s/Pamela A. Barker*
                                     PAMELA A. BARKER
Date:  May 11, 2022                    U. S. DISTRICT JUDGE